IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CORINA ZIRK,

                          Plaintiff,                    OPINION & ORDER

        v.
                                                        16-cv-448-jdp
NATIONSTAR MORTGAGE,

                          Defendant.

Plaintiff Corina Zirk brings claims against defendant Nationstar Mortgage for violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, violations of Wis. Stat. § 224.77, and breach of contract. Dkt. 1. Zirk contends that Nationstar gave her confusing and conflicting information about the status of her mortgage and failed to apply payments that she had made.

This case has not progressed smoothly, primarily because Zirk did not timely respond to Nationstar's discovery requests and she propounded no discovery requests of her own. But the fault does not lie entirely with Zirk, because Nationstar waited too long to deal with Zirk's lack of diligence. As a result, the record before the court is sparse and something of a mess. But this much is beyond genuine dispute: Zirk has failed to adduce admissible evidence to sustain her burden to prove her federal claims. The court will grant Nationstar's motion for summary judgment. The court will decline jurisdiction over her state-law claims and dismiss them.

BACKGROUND

In 2004, plaintiff Corina Zirk, then known as Corina Kritz, purchased a duplex on the corner of S. Walnut Street and Nicolet Street in Janesville, Wisconsin. The purchase was

financed by the First Federal Capital Bank of La Crosse and secured by a mortgage. In 2006, the mortgage and loan were assigned to H&R Block Bank, and at some point defendant Nationstar Mortgage became the servicer of the loan.

Then Zirk ran into financial difficulties, which she attributes to her ex-husband's failure to pay child support. In 2011, Zirk filed a chapter 13 bankruptcy petition. During the bankruptcy proceedings, Nationstar filed a motion for relief from stay, contending that Zirk had missed several mortgage payments in 2012. Nationstar and Zirk resolved that motion by agreeing that Zirk had missed four payments and that she would amend her bankruptcy plan accordingly. Zirk's bankruptcy was converted to a chapter 7, Zirk received an order of discharge, and the bankruptcy court closed the case. Zirk now lives in the house in Janesville that secures the Nationstar mortgage. The bankruptcy is not really our concern: all that really matters here is that the parties agree that Zirk was caught up on her mortgage as of March 2, 2015. Dkt. 30, ¶ 17 (citing Dkt. 24-8).

The central dispute concerns whether Nationstar properly credited Zirk's payments in the rest of 2015 and 2016. The facts that we have come from some statements from Nationstar that Zirk has submitted to the court. Nationstar challenges the admissibility of these statements, but we'll deal with that later. For now, here's what the statements show.

The annual tax statement for 2015 shows that Nationstar applied $2,770.42 to Zirk's principal balance in 2015. Dkt. 24-4, at 4.

A notice sent to Zirk in May 2016 shows that from July 2015 to July 2016, Zirk's monthly mortgage payment was supposed to be $1,740.98; $381.65 of that payment would be applied to principal. *Id.* at 5.

Five monthly statements that Zirk received from January 20, 2016, to May 18, 2016, show that Zirk was not making payments. As of February 1, 2016, she owed Nationstar $19,150.78. *Id.* at 15. The May 18 statement shows that Zirk owed $26,114.70 (her regular monthly payment due June 1, plus $24,373.72 in overdue payments). *Id.* at 7-8. Thus, by May 18, Zirk had missed 14 payments, with another due on June 1. That same statement shows that Nationstar had not received any payments from Zirk in 2016. *Id.* at 8.

The statements also cite legal fees and property inspection fees, marked "lender-paid expenses." *See, e.g., id.* at 8, 10. According to a footnote on the statements, "'Lender Paid Expenses' are funds paid by Nationstar on [Zirk's] behalf to another company." *Id.* at 11. It is not clear that Nationstar passed these expenses on to Zirk, because they were never included in her "total amount due."

Zirk adduces no other documentation of any payments to Nationstar, and she does not remember anything that adds to the information in the billing statements. Zirk contends that she had trouble figuring out how Nationstar had applied her payments. As a result, she feared she would lose her house, and she began experiencing anxiety, stress, sleeplessness, and headaches. She stopped participating in activities she enjoys.

In 2015, after her bankruptcy, Zirk applied for a modification of her loan. Zirk signed her modification application packet on November 8, 2015. Zirk argues that Nationstar waited until January 2016 respond to the modification application. But Nationstar has adduced evidence that it responded to Zirk's various modification requests on November 11, 2015, November 18, 2015, January 11, 2016, January 13, 2016, and February 11, 2016. Dkt. 30, ¶ 39.

Zirk filed suit on June 23, 2016, alleging that Nationstar's actions had violated the FDCPA and Wis. Stat. § 224.77 (prohibiting certain practices by mortgage lenders), and that it had breached Zirk's loan agreement.

Nationstar propounded discovery requests to Zirk on January 12, 2017. Zirk failed to respond despite repeated demands, and Nationstar moved to compel responses on April 14, 2017, which was a mere ten days before the dispositive motion deadline. The court, through Magistrate Judge Stephen Crocker, granted the motion to compel and moved the dispositive motion deadline to May 8, 2017. Dkt. 14. The court deemed Zirk's objections to have been waived and ordered complete responses by April 21, 2017. Judge Croker also warned Zirk that if she was late or served incomplete responses, he would recommend dismissing the case under Rule 37(b). Zirk served her responses on April 18. Dkt. 15-1. Nationstar contends that the responses are incomplete and it moves to dismiss the complaint under Rule 37. Dkt. 15. Nationstar also moves for summary judgment on the merits. Dkt. 16.

The court has subject matter jurisdiction over Zirk's FDCPA claims pursuant to 28 U.S.C. § 1331, because they arise under federal law. The court may exercise supplemental jurisdiction over Zirk's state-law claims pursuant to 28 U.S.C. § 1367.

ANALYSIS

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing Nationstar's motion for summary judgment, the

court construes all facts and draws all reasonable inferences in Zirk's favor. *Id.* at 255. "To survive summary judgment, the nonmovant must produce sufficient admissible evidence, taken in the light most favorable to it, to return a jury verdict in its favor." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012). "[S]ummary judgment 'is the "put up or shut up" moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). A mere "scintilla of evidence" is not enough to survive. *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001).

## A. Preliminary evidentiary issue

The court will decide this case on the merits of Nationstar's motion for summary judgment. Accordingly, the court does not need to reach Nationstar's motion to dismiss the case as a discovery sanction under Rule 37. However, the court must begin with a preliminary issue involving discovery: are the Nationstar statements and notices admissible? Nationstar contends that they are not admissible because they were not disclosed during discovery. The court agrees.

Zirk did not produce the notices and billing statements in response to Nationstar's requests for production. For example, this is Nationstar's first request for production and Zirk's response:

> Request for Document No. 1: All communications and other documents concerning any payments made and/or not made in connection with the Subject Loan.
>
> Answer: See accompanying applications for modification. Communications consisting of pleadings and other documents also may be found in online court records of Zirk's bankruptcy

5

proceedings. Those are not being provided as they are equally accessible by defendant.

Dkt. 18-4. The notices and billing statements would have been responsive to this request, and to Nationstar's request numbers 2 and 3. But Zirk did not produce the notices and statements, or even refer to them in any way.

Zirk contends that she was not obligated to produce the notices and statements because they had been provided to Nationstar with Zirk's initial disclosures. To support this contention, Zirk submits a declaration of her counsel, Briane Pagel, who states:

> Attached hereto as Exhibit D are our initial disclosures, which we served on October 21, 2016. I am including with that Exhibit C the correspondence that was sent along with those disclosures. I did not include these with the discovery responses because they had been provided 6 months prior to those, when we first served our initial disclosures.

Dkt. 24, ¶ 15. Exhibit D to the declaration is a two-page initial disclosure document electronically signed by counsel, followed by a handwritten note from plaintiff to counsel, and 12 pages of notices and statements which appear to be from Nationstar. Dkt. 24-4. (The court presumes that the reference to "Exhibit C" is simply an error.) The initial disclosure document states that among the documents to be relied on are "Billing statements and correspondence from Nationstar to Ms. Zirk. Copies in possession of Ms. Zirk are being sent with this disclosure." *Id.* at 2.

But Nationstar contends that the 12 pages of notices and statements were *not* included with Zirk's initial disclosures served on October 21. To support its contention, Nationstar submits the declaration of one of its attorneys, Jeffrey Karek, who attaches the entire set of emails that Pagel sent on October 21. Dkt. 32. The Karek declaration shows that Pagel sent the two-page initial disclosure document as the single attachment to an email sent at 4:35 p.m.

on October 21, 2016. Over the next 15 minutes, Pagel sent the rest of the initial disclosures in 17 more emails, eight of which had attachments. The disputed Nationstar notices and billing statements were not included or attached to any of the emails. Although the Karek declaration was filed with Nationstar's reply, Pagel has not objected to or disputed Karek's assertions in any way. The Karek declaration, with its supporting documentation, shows that Pagel did not provide the notices and statements with the October 21, 2016, initial disclosures.[1]

Nor did Zirk refer to the notices and statements in any of her responses to Nationstar's interrogatories. *See* Dkt. 18-3. Nationstar asked Zirk to disclose all communications between plaintiff and Nationstar, and Zirk did not mention the notices and statements at all. Even if Zirk had included the notices and statements with her initial disclosures, she had an obligation to respond completely to the interrogatories, which required her to identify all the communications she had with Nationstar.

Because Zirk did not disclose the notices and statements during discovery, Zirk may not rely on these documents in opposition to Nationstar's motion for summary judgment. *See Bluestein v. Cent. Wis. Anesthesiology, S.C.*, 296 F.R.D. 597, 602 (W.D. Wis. 2013) (noting that "plaintiff cannot use any unproduced documents to prove or defend her case at summary judgment or trial"); *see also* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

---

[1] Pagel's informal service of the initial disclosures through a series of 18 emails illustrates the value of Bates numbering. Had Pagel identified his document production by range of Bates numbers, there would be no confusion about what documents were disclosed and when.

The notices and billing statements are excludable for a second reason: Zirk did not comply with Rule 56's affidavit requirements. Parties must "properly support an assertion of fact" at summary judgment, and "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4), (e). Here, Zirk filed the notices and billing statements only as exhibits to her attorney's declaration. Dkt. 24 and Dkt. 24-4. But Pagel does not have personal knowledge of the billing statements, and he would not be the one to testify about them at trial. "To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56[] and the affiant must be a person through whom the exhibits could be admitted into evidence." *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 496 (7th Cir. 2006) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 n.7 (7th Cir. 2003)). "[C]ounsel must remember that the requirements of Rule 56(e) [now Rule 56(c)(4)] are set out in mandatory terms and the failure to comply with those requirements makes the proposed evidence inadmissible during the consideration of the summary judgment motion." *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987).

## B.  Zirk fails to adduce evidence of deceptive practices under the FDCPA

The FDCPA prohibits debt collectors from engaging in abusive, deceptive, or unfair debt-collection practices. 15 U.S.C. § 1692 *et seq*. Zirk adduces only the notices and billing statements to show that Nationstar violated the FDCPA. The court has excluded those documents, so Zirk's FDCPA claims fail as a result. But for completeness, the court will entertain Zirk's core contentions on the merits.

Zirk contends that those documents communicate conflicting information about her mortgage payments and show that Nationstar misapplied her payments. Here's her theory. The notices and the monthly statements show that (1) her monthly payments were supposed to be $1,740.98; (2) she was $26,114.70 (or 15 monthly payments) behind as of June 2016; so (3) Nationstar was clearly under the impression that Zirk had not made any monthly payments since March 2015 (15 months from June 2016 is March 2015). So far, so good. But Zirk also contends that the annual tax statement for 2015 shows that she made monthly payments through *July* 2015. The tax statement shows that Nationstar applied $2,770.42 to the loan's principal balance in 2015. Zirk argues that this means that she made more than seven monthly payments in 2015, because $381.65 of each monthly payment went to paying down the principal. So, argues Zirk, she must have made monthly payments through July 2015. According to Zirk, the tax statement cannot be reconciled with the monthly statements from 2016.

Zirk is entitled to the benefit of all reasonable inferences, but the inference that the 2015 tax statement shows that she made seven payments in 2015 is not reasonable. First, $2,770.40 does not divide evenly by $381.65, which undermines the idea that Zirk made the same regular payments of $1,740.98 throughout the first seven months of 2015. Zirk was still in bankruptcy in the first months of 2015, which may have affected the amount credited to her mortgage principal. Zirk says that making payments through July is consistent with her recollection, Dkt. 25, ¶ 8, but that's not the same as affirmative testimony that she actually made payments through July. She adduces no evidence to corroborate her theory, such as cancelled checks or a bank statement showing the payments. She offers no explanation why she could not get this corroborating evidence, which should be well within her control. And she

might have even been able to get corroborating evidence from Nationstar, but she did not make any discovery requests. No reasonable jury could conclude from the evidence that Zirk has adduced that Nationstar misapplied Zirk's mortgage payments or issued incorrect or misleading statements about the state of her mortgage.

## C. Zirk fails to adduce evidence that her mortgage is a "debt" under the FDCPA

Zirk's FDCPA claims suffer from another fundamental deficiency. For the FDCPA to apply, two threshold criteria must be met: first, Nationstar must be a debt collector, and second, Nationstar must have communicated with Zirk "in connection with the collection of any debt." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010) (quoting 15 U.S.C. §§ 1692c(a)-(b), 1692e, 1692g). A "debt" under the FDCPA is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

The court will assume that Nationstar is a debt collector. But Nationstar contends that Zirk has not shown that her mortgage is a *debt* under the FDCPA. As Zirk acknowledges, "the relevant time for determining the nature of the debt is when the debt first arises, not when collection efforts begin." *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 874 (7th Cir. 2000). So Zirk needs to adduce evidence that she purchased the mortgaged property primarily for personal, family, or household purposes.

Zirk responded with evidence that she has been living in the house since 2011.[2] But the problem is that Zirk purchased the house and took out the loan in 2004. When Nationstar

---

[2] Zirk's bankruptcy schedules list the property as Zirk's residence. *See generally* Dkt. 24-6 (noting "[r]esidence is duplex and debtor's son rents the other half of the duplex"). Those documents are from 2011. Zirk's loan modification paperwork from 2015 and 2016 also lists

asked Zirk to "[d]escribe in full and complete detail the factual basis for [her] implied contention that the Subject Loan was primarily for personal, family or household purposes," Zirk answered that she "resided in and resides in the house." Dkt. 18-3, at 5. That does not show that she purchased the property in 2004 primarily for personal, family, or household purposes. Tellingly, the property is a duplex, and Zirk has collected rent from her son (at least as of 2011). Zirk's pitch that "[t]here is no record that she ever lived anywhere else" is not the same as adducing evidence that shows the nature of the debt when it arose. Dkt. 23, at 16-17. Zirk has not adduced any affirmative evidence—even her own affidavit—that she purchased the house in 2004 primarily for personal, family, or household purposes.

But Nationstar has pointed to evidence that Zirk did *not* purchase the house primarily for personal, family, or household purposes, but that she intended to *rent* the property when she purchased it. A debt securing a rental property falls outside of the FDCPA. *See Miller*, 214 F.3d at 874-75. The mortgage provides that Zirk must "maintain insurance against rent loss" and that she "assigns and transfers to Lender all the rents and revenues ('Rents') of the Property" if she defaults. Dkt. 24-7, at 26. And the section titled "Borrower's Occupancy" was deleted. *Id*. That section would have provided, "Borrower shall occupy, establish, and use the Property as Borrower's principal residence." *Id.* at 14. And the loan was taken out from a financial institution in La Crosse, not Janesville, where the property is located. All this raises doubt about whether Zirk purchased the Janesville home as her own residence.

the property as her residence. Dkt. 24-5. That document is dated November 8, 2015. *Id.* at 6.

Zirk has not adduced evidence that would allow a reasonable jury to find that Nationstar violated the FDCPA. It is Zirk's burden to adduce this evidence, and the court will grant Nationstar's motion for summary judgment on Zirk's FDCPA claims.

## D. State-law claims

That leaves Zirk's state-law claims. Under 28 U.S.C. § 1367, the court may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Based on the court's appraisal of Zirk's theory of the case, which relies on Nationstar's notices and statements, Zirk has little chance of success on her state-law claims.

But it is "the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").

Zirk has failed to meet her burden on her federal claims, but the court sees no strong reason to depart from the circuit's general rule. Neither side has fully developed the underlying factual record concerning Nationstar's servicing of Zirk's loan, so the court will decline to exercise supplemental jurisdiction over Zirk's state-law claims.

ORDER

IT IS ORDERED that:

1.  Defendant Nationstar Mortgage's motion to dismiss plaintiff's complaint pursuant to the court's April 14, 2017 discovery order, Dkt. 15, is DENIED as moot.

2.  Defendant's motion for summary judgment, Dkt. 16, is GRANTED. Plaintiff Corina Zirk's FDCPA claims are dismissed with prejudice; her state-law claims are dismissed without prejudice.

3.  The clerk of court is directed to enter judgment in favor of defendant dismissing plaintiff's claims and close the case.

Entered August 8, 2017.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge